UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OTIS NICHOLAS FFRIEND,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No.  26-cv-03942-WHO

**ORDER GRANTING TRO**

Re: Dkt. No. 4

Petitioner-plaintiff Otis Nicholas Ffriend ("Ffriend") moves the Court *ex parte* for a temporary restraining order that would require his immediate release from ongoing detention by agents of Immigration and Customs Enforcement ("ICE") and prohibit ICE from re-arresting him without affording him a hearing before a neutral decisionmaker.  He also seeks to prohibit the government from transferring him out of the Northern District of California and/or removing him from the United States until these habeas proceedings have concluded.  For the reasons set forth below, Ffriend's request is GRANTED.  I ORDER defendant-respondents to release Ffriend from his ongoing detention and prohibit them from re-arresting or otherwise re-detaining Ffriend without first providing him a hearing before an immigration judge at which the government establishes by clear and convincing evidence that changed circumstances show detention is necessary to prevent his flight or to protect the public.

**BACKGROUND**

The evidence before the Court establishes that Ffriend, a native and citizen of Jamaica, arrived in the United States in 2022 to seek asylum.  Motion for Temporary Restraining Order ("TRO") [Dkt. No. 4] at 1.  Ffriend is a member of the LGBTQ community and "fear[ed] harm in his native Jamaica."  Declaration of Reena Arya in Support of TRO ("Arya Decl.") [Dkt. No. 4-1]

at ¶ 4. On November 13, 2024, Ffriend was granted Convention Against Torture ("CAT") withholding "after an immigration judge found it is more likely than not that he would suffer persecution if returned to Jamaica" because of his sexual orientation. *Id.*; TRO at 3.

After being granted withholding of removal under CAT, Ffriend has been under an "order of supervision (OSUP) with ICE that requires regular in-person and virtual ICE appointments and check-ins." TRO at 1. He has "been compliant with all check-in requirements." *Id.* He has "not committed any crimes and has no criminal history." *Id.* at 3. Ffriend has been living with his wife, who is a United States citizen, and step-children in Willits, California. *Id.* Ffriend works as a groundskeeper at a local school and "volunteers with the school and community as a soccer coach." *Id.*

Ffriend maintains that he has made every "good faith effort to comply with all release and supervision terms." *Id.* Nonetheless, a "few days before May 1, 2026, Petitioner received a call from ICE," asking for his "current residential and employment address." *Id.* Ffriend provided such information upon request. *Id.* On May 1, 2026, Ffriend was at work when he received another call from ICE. *Id.* This time, ICE indicated that they were at his house. *Id.* Ffriend returned home, where he was "arrested without a warrant and brought to the ICE facility in San Francisco at 630 Sansome Street." *Id.* Ffriend was "arrested and detained without prior warning or any evidence of changed circumstances that would warrant Petitioner a flight risk or a danger to the community." *Id.* Once he was in the ICE facility, Ffriend was told by ICE officers that "he would be processed for removal to Saint Kitts, a country never designated as a country for removal during [his] removal proceedings." *Id.*

Ffriend remains in ICE custody. *See id.* He brings this TRO on the grounds that the government violated his procedural due process rights by (1) detaining him without providing a legitimate showing of changed circumstances that warrant him a flight risk or a danger to the community, and (2) providing an improper third country for removal. *See id.* at 3–4. He now requests that I "issue a [TRO] immediately releasing [him] from . . . custody and enjoining the government from re-arresting him absent sufficient notice and a hearing." *Id.* at 4. He also requests that I "prohibit the government from transferring Petitioner out of this District and

United States District Court
Northern District of California

removing him from the country until these proceedings have concluded." *Id.*

**LEGAL STANDARD**

The standard for issuing a TRO is largely identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Petitioners seeking such relief must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balancing of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. For the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

Although the substantive standards for both motions are similar, the timeframe for a TRO is different. While a preliminary injunction remains in effect pending final resolution of the litigation, "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). Federal Rule of Civil Procedure 65(b)(1) allows a TRO to be issued without notice to the opposing party—i.e., *ex parte*—only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the "movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

**DISCUSSION**

3

As an initial matter, Ffriend has satisfied the requirements for issuance of an *ex parte* order. The affidavit of the petitioner's counsel demonstrates that he will suffer immediate and irreparable injury, loss, or damage by virtue of his continued detention before respondent can be heard in opposition, and that counsel attempted to contact the United States Attorney's Office on May 1, 2026. *See* Declaration of Nicole A. Gorney in Support of TRO ("Gorney Decl.") [Dkt. No. 4-2] at ¶ 8.

Here, Ffriend seeks to enjoin defendants from (1) re-detaining him without notice and an opportunity to be heard, or (2) removing him to Saint Kitts, a third country. Ffriend has demonstrated that there are serious questions to the merits of both claims under the Due Process Clause of the Fifth Amendment and has further established that he is likely to succeed on the merits.

The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law. U.S. CONST. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "Freedom from imprisonment—from governmental custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause affords. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Ffriend first claims that his substantive due process rights were deprived by respondents when he was detained without a "sufficient purpose." TRO at 4. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017); *Zadvydas*, 533 U.S. at 690. Here, Ffriend maintains that respondents "arrested [him] without a warrant and brought [him] to the ICE facility in San Francisco" without "prior warning or any evidence of changed circumstances that would warrant [him] a flight risk or a danger to the community." TRO at 1. Ffriend has "not committed any crimes and has no criminal history." *Id.* at 3. He is an active member of his local community, where he serves as a groundskeeper and a

*United States District Court*
*Northern District of California*

4

volunteer soccer coach. *Id.* Accordingly, nothing in the motion suggests that Ffriend is a danger to his community. Additionally, Ffriend has "made a good faith effort to comply with all release and supervision terms." *Id.* And, as his counsel noted, Ffriend was arrested by ICE when complying with its orders to appear at his home. *Id.* These facts suggest that he is not a flight risk. Taken together, I agree with Ffriend that he is likely to prevail on the merits of his substantive due process claim.

Ffriend is also likely to prevail on his third country claim. Ffriend argues respondents' threat to remove him to St. Kitts, a third country of which he has no relation, violates his procedural due process rights. To determine whether a petitioner's procedural due process rights have been violated, courts must first identify a protected liberty interest at stake. Upon identifying such an interest, the court must determine whether the petitioner should have been afforded procedural protections under *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under the *Mathews* test, courts must balance three factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir. 1985) (en banc) (citing *Mathews*, 424 U.S. at 335).

Here, Ffriend has sufficiently identified his liberty interests in remaining out of immigration custody. Noncitizens like Ffriend who are conditionally released into the United States, including through CAT withholding proceedings, have a significant liberty interest in remaining out of immigration custody. *Pablo Sequen v. Albarran*, 806 F. Supp. 1069, 1082 (N.D. Cal. 2025) (Pitts, J.); *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("[A] person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated").

Having identified this liberty interest, the *Mathews* factors all suggest that Ffriend was improperly deprived of procedural due process. First, his private interest in liberty is substantial. Ffriend has resided in the United States since 2022, and he "has an interest in remaining in [his]

home ... providing for [his] family ... [and] maintaining [his] relationships in the community." TRO at 3; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (Pitts, J.) (citing *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 167684 (N.D. Cal. June 14, 2025).

The second and third *Mathews* factors—the probative value, if any, of additional or substitute procedural safeguards, and the government's countervailing interests—also weigh in Ffriend's favor. 424 U.S. at 335. A hearing before a neutral decision-maker is "one of the most basic due process protections." *Cortez v. I.N.S.*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). With respect to third country removal, district courts have noted that noncitizens "must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews*, 424 U.S. at 349). Ffriend was not afforded such an opportunity. As his TRO shows, Ffriend was only told that he was being processed for removal to Saint Kitts after being detained by ICE and transferred to San Francisco. TRO at 3. He was never provided notice or a pre-deprivation hearing—a de minimis burden to the government. And the record does not provide any inclination that the government has any significant countervailing interest in removing him to Saint Kitts. Taken together, these facts all demonstrate that Ffriend was likely deprived of his procedural due process rights when not provided an opportunity to challenge his third country removal.

Ffriend has also demonstrated a likelihood of irreparable injury in the absence of temporary relief due to his ongoing and likely unconstitutional deprivation of liberty. "The loss or threatened infringement upon [constitutional] rights for even minimal periods of time unquestionably constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (citation modified). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). It follows from this conclusion that Ffriend "will likely be deprived of [his] physical liberty unconstitutionally in the absence of the injunction . . . that [he] ha[s] also carried [his] burden as to irreparable harm." *Hernandez v. Sessions*, 872

United States District Court
Northern District of California

6

United States District Court
Northern District of California

F.3d 976, 995 (9th Cir. 2017).

The final two *Winter* factors—the balance of the equities and the public interest—tip in Ffriend's favor. These two factors are merged because the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Because Ffriend sufficiently alleged that his detention and potential third country removal "is inconsistent with federal law . . . the balance of hardships and public interest factors weigh in favor" of granting the TRO. *Moreno Galvez v. Cuccinelli*, 387 F. Supp. 3d 1208, 1218 (W.D. Wash. 2019). "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1042 (citation modified). Where Ffriend is suffering irreparable harm in detention and risk of third country removal, the potential harm to the government—at worst, a short delay in detaining Ffriend until it makes the requisite showing of necessity before a neutral decisionmaker—is minimal. *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

Finally, Ffriend's immediate release is required to return him to the status quo. The "status quo" refers to the state of the parties' relationship "before the action challenged in the complaint occurred." *Youth 71Five Ministries v. Williams*, [**FILL**]. Here, that is the moment prior to Ffriend's likely illegal detention. *See Pablo Sequen*, 806 F. Supp. At 1082; *Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a TRO requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because Ffriend satisfies all of the requirements for temporary injunctive relief and such relief is necessary to restore the status quo, his motion for a temporary restraining order is GRANTED. And because "there is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that respondents will be reimbursed for "costs and damages sustained by ... hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

7

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that petitioners' motion for a temporary restraining order as to Ffriend is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Defendants are **ORDERED** to immediately release Ffriend from custody and are **TEMPORARILY ENJOINED AND RESTRAINED** from re-detaining Ffriend without providing him a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent his flight or to protect the public.  They are also **TEMPORARILY ENJOINED AND RESTRAINED** from removing Ffriend from the Northern District of California and the United States pending further order of this Court.  Should defendants choose to conduct such a hearing, defendants are **ORDERED** to provide Ffriend reasonable advance notice of the time and place of the hearing and an order issued.

This Order shall remain in effect until **May 15, 2026.  This Order SHALL be served on defendants such that they receive actual notice as soon as possible.**  Petitioner shall file proof of service or a status report by no later than May 4, 2026 at 12:00 p.m. PST.  Defendants shall provide a status report confirming the release of Ffriend by no later than May 4, 2026 at 12:00 p.m. PST.

Defendants are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not be issued in favor of Ffriend. The hearing will be held via Zoom videoconference at 10:00 a.m. PST on **Thursday, May 14, 2026**. Defendants shall file a response to Ffriend's motion by no later than Friday, May 8, 2026 at 5:00 p.m. PST. Any reply shall be filed by Tuesday, May 12, 2026 at 12:00 p.m. PST.

**IT IS SO ORDERED.**

Dated: May 2, 2026

_____
William H. Orrick
United States District Judge