UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OTIS NICHOLAS FFRIEND,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No.  26-cv-03942-WHO

**ORDER GRANTING PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 1, 4, 8, 10

On May 1, 2026, I granted a temporary restraining order ("TRO") prohibiting respondents Sergio Albarran, Todd M. Lyons, Markwayne Mullin, and Todd Blanche (collectively, "respondents" or "the government") from re-detaining petitioner Otis Nicholas Ffriend ("Ffriend") or removing him to a third country without first providing him a pre-deprivation hearing before a neutral decisionmaker.  I also issued an Order to Show Cause requiring the government to explain why a preliminary injunction should not issue.

The government now moves to quash the TRO, arguing that I lack jurisdiction over Ffriend's claim and that his request for relief fails on the merits.  Those arguments are unpersuasive.  Jurisdiction is proper where, as here, a petitioner raises a due process challenge to the manner of detention or removal, rather than contesting the removal order itself.  And Ffriend has also made a strong showing that he is likely to succeed on the merits, that he faces irreparable harm in the absence of injunctive relief, and that both the balance of equities and the public interest weigh in his favor.  For the additional reasons set forth below, Ffriend's request for a preliminary injunction is GRANTED.

**BACKGROUND**

Ffriend, a native and citizen of Jamaica, arrived in the United States in 2022 to seek

asylum. Motion for Temporary Restraining Order ("TRO Mot.") [Dkt. No. 4] at 1. He is a member of the LGBTQ community and "fear[ed] harm in his native Jamaica." Declaration of Reena Arya in Support of TRO ("Arya Decl.") [Dkt. No. 4-1] ¶ 4. On November 13, 2024, Ffriend was deemed inadmissible pursuant to Section 212(a)(6)(A)(i) of the Immigration and Naturalization Act ("INA") but was granted Convention Against Torture ("CAT") withholding "after an immigration judge found it is more likely than not that he would suffer persecution if returned to Jamaica" because of his sexual orientation. *Id.*; TRO at 3; Order of Immigration Judge in Support of Application for TRO ("IJ Order") [Dkt. No. 4-3] at 2. Since then, Ffriend has been under an "order of supervision (OSUP) with ICE that requires regular in-person and virtual ICE appointments and check-ins." TRO Mot. at 1. He has "been compliant with all check-in requirements." *Id.* He has "not committed any crimes and has no criminal history." *Id.* at 3. He has been living with his wife, who is a United States citizen, and step-children in Willits, California. *Id.* He works as a groundskeeper at a local school and "volunteers with the school and community as a soccer coach." *Id.*

Ffriend maintains that he has made every "good faith effort to comply with all release and supervision terms." *Id.* Nonetheless, a "few days before May 1, 2026, Petitioner received a call from ICE," asking for his "current residential and employment address." *Id.* at 1. Ffriend provided that information. *Id.* On May 1, 2026, he was at work when he received another call from ICE. *Id.* This time, ICE indicated that they were at his house. *Id.* Ffriend returned home, where he was "arrested without a warrant and brought to the ICE facility in San Francisco at 630 Sansome Street." *Id.* He was "arrested and detained without prior warning or any evidence of changed circumstances that would warrant Petitioner a flight risk or a danger to the community." *Id.* Once in the ICE facility, Ffriend was told by ICE officers that "he would be processed for removal to Saint Kitts, a country never designated as a country for removal during [his] removal proceedings." *Id.* ICE currently intends to remove Ffriend to Saint Kitts and Nevis on May 19, 2026. Respondents' Motion to Dissolve the TRO ("Oppo.") [Dkt. No. 8] at 2; Declaration of Elvia R. Wilcox ("Wilcox Decl.") [Dkt. No. 8-1] ¶ 7.

On May 1, 2026, Ffriend filed a petition for writ of habeas corpus and a motion for a TRO.

*See* Petition for Writ of Habeas Corpus [Dkt. No. 1]; TRO Mot. I granted Ffriend's request for a TRO on May 2, 2026, prohibiting respondents from re-detaining him without a pre-deprivation hearing. *See* Order Granting Temporary Restraining Order ("TRO Order") [Dkt. No. 5]. I also issued an Order to Show Cause, requiring the government to show why a preliminary injunction should not be issued in his favor. *Id.* On May 8, 2026, the government filed its opposition to the TRO as a motion for reconsideration. *See* Oppo. Ffriend replied on May 12, 2026. *See* Petitioner's Traverse in Reply to Respondents' Motion (Repl.") [Dkt. No. 10]. I heard oral argument on May 14, 2026.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. This has been interpreted as a four-part conjunctive test, not a four-factor balancing test. But the Ninth Circuit has adopted a sliding scale approach, where a plaintiff may obtain an injunction so long as he demonstrates "serious questions going to the merits," that the balance of hardships "tips sharply" in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public interest. *See All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).

## DISCUSSION

### I.    Likelihood of Success on the Merits

#### A.    Jurisdiction

In evaluating Ffriend's likelihood of success on the merits, I first consider whether I have jurisdiction over the dispute. "District courts in the Ninth Circuit treat a lack of subject matter jurisdiction as a failure to show a likelihood of success on the merits." *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 2243616, at *3 (N.D. Cal. Aug. 6, 2025) (Tigar, J.) (quoting *Malevannaya v. T-Mobile*, No. C18-0886-JLR, 2018 WL 3023085, at *2 (W.D. Wash. June 18, 2018) (collecting cases)).

The government raises several jurisdictional arguments. First, it argues that 8 U.S.C. § 1252(g) bars review of Ffriend's claims. Oppo. at 4–5. That section provides that "no court shall have any jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).[1] The government asserts that Ffriend's "challenge to his removal to a third country is a claim 'arising from' [its] 'action' to 'execute removal orders against an[] alien.'" Oppo. at 4 (quoting 8 U.S.C. § 1252(g)).

That is wrong. The Supreme Court recognized in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999), that Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (emphasis in original); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). Indeed, "instead of sweeping in any claim that can technically be said to 'arise from' the three listed actions, the provision refers to just those three specific actions themselves." *Ibarra-Perez*, 154 F.4th at 996 (cleaned up) (internal quotations omitted). Ffriend does not challenge the execution of the final removal order entered against him; he challenges "ICE's claim that they can detain and remove Petitioner to a third-country without the opportunity to apply for protection from removal to the proposed third-country." Repl. at 3. Accordingly, "his claims do not challenge the government's 'decision or action . . . to . . . execute removal orders,' and Section 1252(g) does not bar . . . review of his claims." *See Ortega*, 2025 WL 2243616, at *3.[2]

---

[1] While I use the term "noncitizen" to refer to individuals subject to the INS, I include the original language of "alien" in the statute and other case law references.

[2] The government also posits that "[n]umerous circuits, including the Ninth, have relied on § 1252(g) as a bar to claims when an alien pressing a constitutional claim seeks to pause removal while he seeks other immigration relief." Oppo. at 4 (citing *Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., Imm. & Customs Enf't*, 988 F.3d 1268, 1274 (11th Cir. 2021); *E.F.L. v. Prim, Imm. & Customs Enf't*, 964–65 (7th Cir. 2021); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020); *Hamama v. Adducci*, 912 F.3d 869, 874–77 (6th Cir. 2018), *cert. denied*, 141 S. Ct. 188 (2020); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017); *Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001); *Tsering v. U.S. Imm. & Customs Enf't*, 403 F. App'x 339, 342–43 (10th Cir. 2010). These cases are not persuasive. "Numerous courts in the Ninth

United States District Court
Northern District of California

The government next argues that even if Section 1252(g) does not bar review, 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) establish that only a court of appeals may hear Ffriend's petition for review. Oppo. at 6. Those sections provide that "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," 8 U.S.C. § 1252(a)(5), and that such petition shall be the sole avenue for "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter," 8 U.S.C. § 1252(b)(9). But "the language of these sections was 'not intended to preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" *Ortega*, 2025 WL 2243616, at *4 (quoting *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (internal quotations omitted)). Where a party "does not challenge the validity of his final removal order . . . but instead challenges his removal to a third country *without* a removal order there, . . . Sections 1252(a)(5) and 1252(b)(9) do not bar this Court's review of [his] claims." *Id.* Because Ffriend's request for injunction challenges his removal to Saint Kitts and Nevis, a country where he has no removal order, I retain jurisdiction over his claims. *See id.*

Finally, the government argues that the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") bars review of Ffriend's claims. Oppo. at 5–6. FARRA implements CAT and provides that "no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims considered under the Convention or this section." FARRA § 2242(d), codified at 8 U.S.C. § 1231. Ffriend's claims do not "challenge DHS's existing procedures for certain CAT claims," contrary to the government's belief. Oppo. at 5. Instead, he asks "not to be

Circuit have addressed this same jurisdictional argument and have found that while it is not within a district court's jurisdiction to enjoin the government's execution of a lawful removal order, it is within the court's jurisdiction to prevent removal absent statutory and constitutional due process requirements." *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1134 (E.D. Cal. 2025) (citing *Y.T.D. v. Andrews*, No. 1:25-cv-01100-JLT-SKO, 2025 WL 2675760, at *5 (E.D. Cal. Sept. 18, 2025); *Ortega*, 2025 WL 2243616, at *3; *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1006 (W.D. Wash. 2019). Because Ffriend does not seek review of the immigration judge's final removal order, I have jurisdiction to review the issues raised in his request for injunctive relief. *See id.*

detained or removed without first receiving due process as to any CAT claim he might have for a third country to which the Government seeks his removal." *See Ortega*, 2025 WL 2243616, at *4; Repl. at 3. "FARRA, by its plain language, does not bar this Court's review of such claims." *Ortega*, 2025 WL 2243616, at *4.

### B.    Merits

Ffriend presents two overarching claims in his habeas petition: (1) that the Fifth Amendment Due Process Clause, the Immigration and Nationality Act ("INA"), the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), and the Administrative Procedure Act ("APA") require the Government to provide meaningful notice and the opportunity to present a fear-based claim before removing him to a third country; and (2) that the Fifth Amendment Due Process Clause and the INA foreclose his detention until removal is "reasonably foreseeable"— i.e., after he receives notice and opportunity to contest his removal. Dkt. No. 1 at ¶¶ 54–74. Ffriend has shown, at a minimum, that serious questions exist as to the merits of each claim.

### 1.    Third Country Removal: Procedural Due Process

Ffriend is likely to succeed on the merits of his claim that his scheduled removal to Saint Kitts and Nevis without adequate notice and an opportunity to be heard violated his procedural due process rights under the Fifth Amendment. The Due Process Clause of the Fifth Amendment prohibits the government from depriving individuals of their life, liberty, or property without due process of law. U.S. Const. amend. V.

Neither party disputes that third country removal orders under certain circumstances are permissible. Indeed, while withholding of removal under CAT precludes an individual from being removed to the country where torture is likely, "nothing prevents DHS from removing the alien to a third country other than the country to which removal has been withheld or deferred." *Johnson v. Guzman Chavez*, 594 U.S. 523, 531–32 (2021) (cleaned up). ICE regulations clarify:

> When a respondent is ordered removed from the United States, the immigration judge shall identify a country, or countries in the alternative, to which the [noncitizen's] removal may in the first instance be made, pursuant to the provisions of [8 U.S.C. § 1231(b)]. In the event that the Department of Homeland Security is unable to remove the [noncitizen] to the specified or alternative country or countries, the order of the immigration judge does not limit the

*United States District Court*
*Northern District of California*

authority of the Department of Homeland Security to remove the [noncitizen] to any other country as permitted by [8 U.S.C. § 1231(b)].

8 C.F.R. § 1240.12(d). While this regulation provides the government "discretion to designate a country of removal outside of removal proceedings," *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019), "it must exercise that authority in the appropriate way[,]" *Wani Site v. Holder*, 656 F.3d 590, 594 (7th Cir. 2011). "That means the designation . . . must comport with due process." *Aden*, 409 F. Supp. 3d at 1009 (citing *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) ("It is well established that the Fifth Amendment guarantees non-citizens due process in removal proceedings."); *Reyes-Melendez v. I.N.S.*, 342 F.3d 1001, 1008 (9th Cir. 2003) ("[A] due process violation is not an exercise of discretion.")).

To comport with procedural due process, a noncitizen "must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Id.* (citing *Mathews v. Eldrige*, 424 U.S. 319, 349 (1976); and *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998)). "The guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Id.* at 1010 (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001)). "[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims." *Id.*[3]

On November 13, 2024, an immigration judge found Ffriend inadmissible pursuant to INA

---

[3] The government claims that Ffriend must be treated akin to an applicant for admission to the United States and that he cannot be afforded more rights than those Congress provided by statute. Oppo. at 7 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). But "*Thuraissigiam* held that a petitioner who was stopped at the border did not have any due process rights *regarding admission into* the United States." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025) (citing *Thuraissigiam*, 591 U.S. at 107). As other district courts have noted, "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States." *Padilla v. U.S. Immig. & Customs Enf.*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023). Here, Ffriend challenges his re-detention and potential removal, not his admission. Accordingly, the holding in *Thuraissigiam* "does not foreclose [Ffriend's] due process claims which seek to vindicate" a right to notice and an opportunity to be heard with respect to his re-detention and third country removal. *See id.* at 1172.

United States District Court
Northern District of California

Section 212(a)(6)(A)(i), but ultimately granted withholding of removal to Jamaica based on his credible fear of persecution due to his sexual orientation.  IJ Order at 2; Arya Decl. ¶ 4  The judge's order listed "JAMAICA" as the country of removal and did not designate any alternative country of removal.  *Id.* at 3.  It was not until May 1, 2026, while detained at an ICE facility in San Francisco, that Ffriend was informed by an ICE officer that "he would be processed for removal to Saint Kitts, a country never designated as a country for removal during [his] removal proceedings."  TRO Mot. at 1.  He was never afforded an opportunity to "pursue fear-based protection from removal" to Saint Kitts and Nevis on account of his LGBTQ+ identity, which he contends he would have pursued had he been provided that opportunity.  Repl. at 6.

The government raises separation of powers concerns with respect to Ffriend's third country removal claim.  Specifically, it relies on a memorandum written by Kristi Noem, then-acting Secretary of Homeland Security, on March 30, 2025, entitled "Guidance Regarding Third Country Removals."  *See* Wilcox Decl. Ex. A.  The purpose of the memorandum was to clarify "DHS policy regarding the removal of aliens with final orders of removal pursuant to sections 240, 241(a)(5), or 238(b) of the Immigration and Nationality Act (INA) to countries other than those designated for removal in those removal orders (third country removals)."  *Id.* at 1.  The memorandum indicated that when the DHS intended to remove a noncitizen to a third country, it must first "determine whether that country has provided diplomatic assurances that aliens removed . . . will not be persecuted or tortured."  *Id.*  If the federal government "received such assurances, and if the Department of State believes those assurances are credible, the alien may be removed without the need for further procedures."  *Id.* at 1–2.  The memorandum then explains in detail the procedures DHS must follow should the Department of State not find the assurances credible.  *Id.* at 2.

The government points out that the United States and Saint Kitts and Nevis "signed a Third Country Removal agreement" on December 12, 2025.  Oppo. at 2 (citing Wilcox Decl. ¶ 4).  Saint Kitts and Nevis then "provided diplomatic assurances that the aliens removed from the United States pursuant to this agreement [would] not be subjected to persecution or torture."  *Id.* (citing Wilcox Decl. ¶ 5).  The Department of State "determined that the diplomatic assurances were

credible." *Id.* ICE then "received notification that [Ffriend's] name was accepted by the Government of St. Kitts & Nevis" for third country removal. *Id.* (citing Wilcox Decl. ¶ 6). Because Saint Kitts provided "credible" diplomatic assurances that Ffriend would not be subject to persecution in the country, the government asserts that courts cannot "second-guess those credibility determinations that are part of the Executive's foreign relations prerogatives." Oppo. at 8; *see Munaf v. Geren*, 553 U.S. 674, 702 (2008) ("The Judiciary is not suited to second-guess such determinations—determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area."). To find to the contrary would be an "unwarranted judicial interference in the conduct of foreign policy," it concludes. *Id.* (quoting *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013)).[4]

I disagree. As numerous district courts within this Circuit have found, the Noem Memorandum "contravenes Ninth Circuit law," and it would "be impossible to comply both with Ninth Circuit precedent [discussing procedural due process] and the policy." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 728 (W.D. Wash. 2025).[5] Compliance with the Noem Memorandum would ignore the numerous mandates from the Ninth Circuit, referenced above, that afford procedural due process to noncitizens facing third country removal. I am bound by Ninth Circuit precedent. *Id.* Accordingly, I decline to find that Ffriend is unlikely to prevail on the merits of his claim due

---

[4] In response, Ffriend argues that the government has "not submitted to this Court any . . . evidence of either the diplomatic assurances received or evidence of the State Department's findings." Repl. at 6. He also suggests that "recent third-country deportees have ended up in deplorable conditions such as being held in converted shipping containers or prisoners where they were tortured." *Id.* at 7. While these facts may be true, the government argues that considering them would "second-guess [the] credibility determinations" made by the Department of State and would present separation of powers concerns under *Munaf*. 533 U.S. at 702. I do not consider these facts in analyzing Ffriend's procedural due process argument.

[5] *See also, e.g.*, *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 3123991, at *3 (W.D. Wash. Nov. 7, 2025); *Abduvakhidov v. Warden, Golden State Annex Detention Facility*, No. 1:25-cv-01060-EPG-HC, 2026 WL 1298157, *4–5 (E.D. Cal. May 12, 2026); *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025); *Machuca del Cid v. Mullin*, No. C26-1271-SKV, 2026 WL 1295891, at *5 (W.D. Wash. May 12, 2026); *Abubaka v. Bondi*, No. C25-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025); *Tan-Gutierrez v. Noem*, No. 3:26-cv-00152-RBM-BJW, 2026 WL 194747, at *5–6 (S.D. Cal. Jan. 26, 2026).

United States District Court
Northern District of California

to the Noem Memorandum.

I instead turn to the well-established two-step procedural due process test. To determine whether a party's procedural due process rights have been violated, courts must first identify whether a protected liberty interest exists. *Berrios v. Albarran*, No. 1:25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025). Then, the court must "determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *A.A.M.*, 815 F. Supp. 3d at 1137. To make such a determination, courts apply the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts must balance three factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir. 1985) (en banc) (citing *Mathews*, 424 U.S. at 335).

The government contends that Ffriend "lacks a liberty interest because he illegally entered the United States without admission" and has been ordered removed. Oppo. at 9. It also posits that Ffriend was released on an "order of supervision," which "last[s] until he could be removed from the United States, which he now can." *Id.* But that misconstrues Ffriend's procedural due process claim. He challenges his inability to pursue a fear-based claim prior to being removed to Saint Kitts and Nevis, not his order of removal. TRO Mot. at 1. In third country removal cases, courts have found that noncitizens have a "protected liberty interest in having an immigration judge review" their fear-based claims prior to third country removal. *A.A.M.*, 815 F. Supp. 3d at 1137. Ffriend therefore has a protected liberty interest in seeking review of the decision to remove him to Saint Kitts and Nevis.

With step one of the procedural due process test satisfied, I turn to *Mathews*. Under the first *Mathews* factor, Ffriend has a "private interest in not being erroneously removed to a third country with which he has no connection, and where he faces potential persecution, torture, and death." *Id.* at 1138. Indeed, "it is explicitly unlawful for DHS to remove Petitioner to a country

United States District Court
Northern District of California

10

where his life or freedom would be threatened." *Id.* (citing 8 U.S.C. § 1231(b)(3); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (explaining that individuals facing "persecution or other mistreatment in the country designated" for removal "have a number of available remedies" to "ensur[e] their humane treatment").

The second *Mathews* factor—risk of erroneous deprivation to Ffriend—also weighs in his favor. The government argues that while Ffriend was "previously released on an order of supervision, there is now a designated country of removal, a travel document, and a flight arranged for [him] to be removed." Oppo. at 9. Because "brief . . . detention is inherently necessary to execute a removal order," the government concludes that there is no risk of erroneous deprivation. *Id.* The government again misinterprets Ffriend's argument. He does not challenge his removal order. Instead, he asserts that he was not afforded an opportunity to pursue fear-based protection from removal to Saint Kitts and Nevis. Should Ffriend be removed to Saint Kitts and Nevis, "there would be no avenue for him to vindicate his rights in the United States." *A.A.M.*, 815 F. Supp. 3d at 1138. That certainly militates in Ffriend's favor.

Finally, the third *Mathews* factor weighs in favor of Ffriend. While I recognize "the government has an interest in the steady enforcement of its immigration laws," that interest is "mitigated because the 'effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case.'" *Id.* (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)). Here, Ffriend was "statutorily entitled to have his initial withholding claim heard in front of an immigration judge, and he was provided that opportunity." *Id.* The government has presented "no reason why it would be substantially burdensome to provide [Ffriend] that same opportunity as to a third country with which [he] has no connection, and for which [he] has presented evidence of a credible fear-based claim for relief." *Id.*

Taken together, these facts all demonstrate that Ffriend was likely deprived of his procedural due process rights when not provided an opportunity to challenge his third country removal. Ffriend is likely to prevail on the merits of his third country procedural due process claim.

11

## 2.    Re-Detention: Procedural Due Process

Ffriend also argues that the government cannot redetain him "unless he is afforded a pre-deprivation hearing before a neutral decisionmaker where the Government bears the burden of proving by clear and convincing evidence that changed circumstance[s] render him a danger to the community or a flight risk." Repl. at 8–9.[6] I agree that he is likely to prevail on the merits of this claim.

The Due Process Clause "protects [noncitizens] subject to a final order of deportation[.]" *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (concluding that due process protections apply to deportation proceedings but also indicating that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process"). *Valencia Zapata v. Kaiser* clarifies this standard:

> [F]reedom from government custody "lies at the heart of the liberty" protected by the Due Process Clause. For that reason, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." In the context of civil immigration detention, the two "regulatory goals" of the Immigration and Nationality Act provisions governing such detention—"ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community"—can provide such "special justification." Although "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Due process requires that "the nature and duration" of detention "bear some reasonable relation to the purpose for which the individual is" detained.

801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (Lin, J.) (quoting *Zadvydas*, 533 U.S. at 690;

---

[6] Ffriend also brings a substantive due process challenge to his detention, arguing that there was no legitimate purpose for detaining him, given the lack of evidence of him being dangerous or a flight risk. TRO Mot. at 4–6. "Because granting a preliminary injunction enjoining the government from detaining [Ffriend] without a pre-detention hearing obviates the threat of any imminent deprivation of [his] substantive due process rights, the Court need not address [his] substantive due process claim at this preliminary stage of the proceedings." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1031 n.1 (N.D. Cal. 2025) (Pitts, J.).

*Hernandez v. Sessions*, 872 F.3d 976, 990, 994 (9th Cir. 2017); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

Ffriend was released from custody on November 13, 2024, after an immigration judge granted him CAT withholding.  IJ Order at 2.  Since his release, he has been under an order of supervision that requires "regular in-person and virtual ICE appointments and check-ins."  TRO Mot. at 1.  He has been "compliant with all check-in requirements."  *Id.*  He has "not committed any crimes and has no criminal history."  *Id.* at 3.  And he lives with his wife and step-children in Willits, California, where he works as a groundskeeper at his local school and volunteers as a community soccer coach.  *Id.*  Nonetheless, on May 1, 2026, ICE was "arrested and detained without prior warning."  *Id.* at 1.  He now claims that his re-detention without any "evidence of changed circumstances that would warrant [him] a flight risk or a danger to the community" was impermissible.  *Id.*

In response, the government claims that Ffriend merely "seeks to graft on the requirement of an additional flight risk or danger finding prior to the execution of Petitioner's removal order."  Oppo. at 9.  It believes that it is "undoubtably empowered to execute removal orders," and that a "brief detention is inherent in the actions of deportation and removal."  *Id.*  Because there are "no constitutional issues arising from the detention of aliens ordered removed for 'a period reasonably necessary to bring about that alien's removal from the United States,'" the government concludes that a preliminary injunction should not be granted on these grounds.  *Id.* (quoting *Zadvydas*, 533 U.S. at 689).

I turn again to the two-part procedural due process test.  First, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody."  *Pinchi*, 792 F. Supp. 3d at 1032; *see Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v.*

13

*Jennings*, No. 20-cv-05785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.")).  Applying these principles, it is clear Ffriend has a protected liberty interest in remaining out of custody.  *See Pinchi*, 792 F. Supp. 3d at 1032–33.  During the time since entering the United States and being granted CAT withholding, he has found a job and provided for his family.  He has also built community at work and through volunteering as a soccer coach.  "These extensive relations of support and interdependence underscore the high stakes of her liberty."  *See id.* at 1033.

The *Mathews* factors also support his claim.  The first *Mathews* factor is met, as Ffriend "has a substantial private interest in remaining out of custody," as well as an "interest in remaining in [his] home, continuing [his] employment, providing for [his] family . . . [and] maintaining [his] relationships in the community" without detention.  *Id.* (citing *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025)); 424 U.S. at 335.  He has also shown it is likely there would be a significant risk that the government would erroneously deprive him of his liberty interest without a pre-detention hearing.  *See id.* at 1035. "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Ffriend] has had an opportunity to determine whether there is any valid basis for [his] detention."  *Id.* (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025) (cleaned up)).  This risk is heightened because Ffriend was detained "after more than [one year] of attending every required immigration hearing and despite [his] deep community ties and lack of any criminal record."  *Id.*  Finally, a hearing before a neutral decisionmaker prior to re-detention is a "de minimis burden on the government."  *Hunter v. Larose*, No. 26-cv-00894-BTM-VET, 2026 WL 1075239, at *1.

Taken together, the *Mathews* factors all suggest that Ffriend has a strong argument on the merits that he was re-detained without proper procedures, including a showing of changed circumstances suggesting Ffriend was a danger to the community or a flight risk.

## II.    Irreparable Harm

"[S]imply showing some 'possibility of irreparably injury' fails to satisfy" the irreparable harm factor. *Nken*, 556 U.S. at 434–35 (citing *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998), *abrogated on other grounds*, *Singh v. Holder*, 658 F.3d 879 (9th Cir. 2011)). Rather, the party seeking relief must provide sufficient evidence that they will be "irreparably injured" absent a preliminary injunction. *Id.* at 426.

Here, Ffriend asserts that the "irreparable harm is clear: he would be removed to a third-country where he may be subjected to torture without an opportunity to present a claim of fear." Repl. at 8. The government, in turn, maintains that any time it is "enjoined by a court from effectuating statutes enacted by Congress, it suffers a form of irreparable harm." Oppo. at 10 (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). It also claims that there is "no constitutional injury from lawful removal," and that Ffriend will accordingly suffer "no cognizable harm from the execution of the legally firm removal order against him." *Id.*

Ffriend has the stronger argument. "It is well established that the deprivation of a constitutional right 'unquestionably constitutes irreparable injury.'" *A.A.M.*, 815 F. Supp. 3d at 1139 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). When an "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation."). Accordingly, the second *Winter* factor tips strongly in favor of Ffriend's request for injunctive relief.

## III.    Balance of the Equities and Public Interest

In cases where the federal government is the opposing party, the balance of the equities and public interest factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). These two factors often turn on whether the district court finds a likelihood of success on the merits of the underlying claim. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069

(9th Cir. 2014).

The government argues that it has a "weighty interest" in removing Ffriend, as "[t]here is always a public interest in prompt execution of removal orders." Oppo. at 10 (quoting *Nken*, 556 U.S. at 436). It also argues that the public interest weighs in its favor, as the government would face "significant delays in detaining Petitioner if they must demonstrate that any detention incident to removal is necessary to prevent flight or danger to the community prior to executing the removal order." *Id.* In this case, the equities described throughout this Order and the public interest in upholding the Due Process rights of those living in our country, including noncitizens, outweigh the asserted governmental interests.

**CONCLUSION**

Based on the foregoing, I ENTER the following preliminary injunction:

Respondents are ENJOINED and RESTRAINED from re-detaining Ffriend: (1) without notice and a pre-deprivation hearing before a neutral decisionmaker in which an individualized determination is made that he poses a flight risk or danger to public safety such that he must be detained; or (2) in the absence of a material change in circumstances justifying his detention.

Respondents are ENJOINED and RESTRAINED from removing Ffriend from the United States or transferring him out of the Northern District of California to preserve this Court's jurisdiction during the pendency of his habeas proceeding. This Order shall remain in effect until further order of the Court.

Respondents are ENJOINED and RESTRAINED from removing Ffriend to Saint Kitts and Nevis, or any other third country not designated on his order of removal, unless he has been afforded notice and an opportunity to pursue fear-based protection from removal to the third country.

**IT IS SO ORDERED.**

Dated: May 14, 2026



William H. Orrick
United States District Judge

United States District Court
Northern District of California